IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| STEVEN BORZYMOWSKI, | CASE NO. 3:22-CV-00902-DAC |
| Plaintiff, | MAGISTRATE JUDGE DARRELL A. CLAY |
| vs. | **MEMORANDUM OF OPINION & ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

### INTRODUCTION

Plaintiff Steven Borzymowski challenges the decision of the Commissioner of Social Security denying disability insurance benefits (DIB). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On May 31, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry dated May 31, 2022). On June 1, 2022, the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Following review, and for the reasons stated below, I **REVERSE** the Commissioner's decision and **REMAND** the case for additional proceedings consistent with this recommendation.

### PROCEDURAL BACKGROUND

Mr. Borzymowski filed for DIB in September 2016, alleging a disability onset date of May 20, 2015. (Tr. 408-09). At the State agency level, the claim was denied initially and on

1

reconsideration. (Tr. 323-31, 341-47). After a hearing in October 2018, the administrative law judge's January 30, 2019 opinion concluded Mr. Borzymowski was not disabled. (Tr. 8-10). The Appeals Council denied Mr. Borzymowski's request for review. (Tr. 1-7).

On appeal to the District Court, Mr. Borzymowski and the Commissioner stipulated to a remand pursuant to Sentence Four. (Tr. 1131). Accordingly, on February 11, 2021, the District Court remanded the matter to the Commissioner with instructions to reweigh the opinion evidence and consider whether Mr. Borzymowski has any manipulative limitations. (*Id.*). On April 29, 2021, the Appeals Council sent the case to a different ALJ with instructions to provide an adequate evaluation of the opinion evidence of record and the manipulative limitations. (Tr. 1139).

Mr. Borzymowski (represented by counsel), and a vocational expert (VE) testified at a hearing before the new ALJ on August 17, 2021. (Tr. 1061-89). On October 1, 2021, the ALJ issued a written decision finding Mr. Borzymowski not disabled. (Tr. 1035-60). The Appeals Council denied Mr. Borzymowski's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1029-34; *see* 20 C.F.R. §§ 404.955 and 404.981). Mr. Borzymowski timely filed this action on May 31, 2022. (ECF #1).

FACTUAL BACKGROUND

I.    PERSONAL AND VOCATIONAL EVIDENCE

Mr. Borzymowski was 44 years old on the alleged onset date, and 51 years old at the 2021 administrative hearing. (Tr. 301). He completed one year of college. (Tr. 441). Mr. Borzymowski has worked as a materials handler, forklift driver, and machine operator. (Tr. 254).

II.    Relevant Medical Evidence

On April 23, 2015, Mr. Borzymowski met with Adam Hedaya, M.D., his pain management physician, and reported a reduction in pain and headaches following a cervical Botox injection. (Tr. 642). Though reduced, Mr. Borzymowski noted some pain persisted that he rated as 5-6 on a 10-point scale. (*Id.*). Mr. Borzymowski also endorsed improved range of motion in his neck. (*Id.*). Physical examination revealed severe tenderness over the cervical spine with limited range of motion, and significant dystonia and spasm "with what appears to be some torticollis as well." (*Id.*). Dr. Hedaya also noted a "poorly localizable neurologic sensory motor examination in the distribution of C3-T1," positive facet loading maneuvers, negative Hoffman and Spurling tests, and unremarkable gait and station. (*Id.*). Dr. Hedaya felt Mr. Borzymowski's pain was secondary to cervicogenic headaches, cervical dystonia, and chronic headaches.[1] (Tr. 642-43). He noted Mr. Borzymowski's neck range of motion and headaches were improving. (Tr. 643). Dr. Hedaya offered a repeat Botox injection that Mr. Borzymowski received on June 9, 2015. (Tr. 643-44).

On July 28, 2015, Mr. Borzymowski returned to Dr. Hedaya and reported no relief from the most recent Botox injection. (Tr. 646). He described fifty percent relief for twenty-four to forty-eight hours after a past cervical facet injection. (*Id.*). Mr. Borzymowski also complained of

---

[1]    Cervicogenic headaches are those that stem from abnormalities in the structure of the neck. *See Migraine headaches–Other headache types–Cervicogenic headache*, Attorneys Medical Advisor § 74:43.10.

Cervical dystonia, also called spasmodic torticollis, is described as a painful condition in which neck muscles contract involuntarily, causing the head to twist or turn to one side. *See* Cervical Dystonia, available at http://www.mayoclinic.org/diseases-conditions/cervical-dystonia/symptoms-causes/syc-20354123 (last visited on March 2, 2023). There is no cure for the disorder and sustained remissions are uncommon. *Id.* "Many people who have cervical dystonia also experience neck pain that can radiate to the shoulders. The disorder can also cause headaches." *Id.*

3

paresthesia down his arms, left greater than right. (*Id.*). He reported the pain was incapacitating at times and impacts his functioning to perform activities of daily living (ADLs). (*Id.*). Mr. Borzymowski stated the medications, including Percocet, ibuprofen, and lidocaine, were helpful without side effects and rated his pain at 6/10. (*Id.*). He described worsened pain with lifting, pulling, pushing, walking, twisting, and bending. (*Id.*). Physical examination revealed severe tenderness and guarding over the cervical spine, positive facet loading maneuvers with some associated spasm, and mild tenderness over the occipital area. (Tr. 647). Upper extremities displayed good strength but depressed reflexes. (*Id.*). Gait and station were stable. (*Id.*). Dr. Hedaya determined Mr. Borzymowski's pain was secondary to a combination of cervical facet joint syndrome, cervical spondylosis, cervicogenic headaches, and cervical dystonia. (*Id.*). He offered to perform a bilateral cervical facet joint injection at the C2 to C5 facet joints and noted that if Mr. Borzymowski did well with the injection, he would consider performing a rhizotomy. (*Id.*). Mr. Borzymowski received the facet injections on August 14, 2015. (Tr. 667).

On September 9, 2015, Mr. Borzymowski returned to Dr. Hedaya's office with complaints of severe pain. (Tr. 648). He reported minimal benefit from the facet injections, endorsed numbness and tingling in his hands, and rated his pain at 7/10. (*Id.*). He described nausea and vomiting accompanying his headaches and endorsed sleeping three to five hours at a time. (*Id.*). He reported Percocet was helpful. (*Id.*). Physical examination revealed hyperalgesia and dysesthesia along the occipital area, "severe tenderness to palpation of the cervical spine with considerable dystonia and spasm," limited and painful range of motion, positive facet loading maneuvers, poorly localizable nonfocal neurological examination in the distribution of C2-T1, hyperalgesia and dysesthesia along the C3 dermatome, and depressed reflexes in the bilateral triceps, biceps,

4

and brachioradialis. (Tr. 648-49). Dr. Hedaya determined Mr. Borzymowski's pain was secondary to occipital neuralgia, cervical spondylosis, cervical facet joint syndrome with comorbid cervical dystonia, and cervicogenic headaches. (Tr. 649). Dr. Hedaya continued Mr. Borzymowski's medications, added a prescription for Trileptal for pain, and offered bilateral occipital nerve blocks that Mr. Borzymowski received on October 22, 2015. (Tr. 649-50).

On November 20, 2015, Mr. Borzymowski saw his primary care physician Paul J. Bruner, D.O., and complained of headaches and muscle aches. (Tr. 726-27). Physical examination revealed cervical spine muscle tenderness. (Tr. 728).

On December 9, 2015, Mr. Borzymowski returned to Dr. Hedaya's office with dystonia and severe pain, rated 8/10. (Tr. 652). He described the pain as incapacitating at times despite using pain medication. (*Id.*). Physical examination revealed severe tenderness to palpation over the cervical spine on the right side, positive facet loading maneuvers, "considerable spasm and torticollis and dystonia in the cervical spine," nonfocal neurological sensory motor examination in the distribution of C3 to T1, depressed reflexes in the bilateral biceps, triceps, and brachioradialis, and some hyperalgesia along the occipital nerve. (*Id.*). Dr. Hedaya determined the pain was secondary to spasmodic torticollis, cervical spondylosis without myelopathy or radiculopathy, headaches, and occipital neuralgia. (Tr. 653). Dr. Hedaya offered a right-sided cervical radiofrequency ablation at C2, C3, C4, and C5, DMR for denervation of C3-C4, C4-C5, and C5-C6 facet joints, a prescription for a cane, and a Medrol Dosepak. (*Id.*).

On February 16, 2016, a sleep study revealed Mr. Borzymowski had severe sleep apnea. (Tr. 733).

On February 18, 2016, Mr. Borzymowski returned to Dr. Hedaya's office and reported some relief from the ablation procedure. (Tr. 654). He described radiating, sharp, electrical pain in the neck and shoulder blades, rated at 5/10. (*Id.*). Physical examination revealed considerable guarding over the cervical spine, somewhat improved but still present positive facet loading maneuvers, some associated spasm, nonfocal neurological sensory motor examination in the upper extremities, and depressed reflexes. (*Id.*). Dr. Hedaya determined Mr. Borzymowski's pain was secondary to cervical spondylosis without myelopathy or radiculopathy. (Tr. 655).

On March 3, 2016, Mr. Borzymowski returned to Dr. Hedaya's office and reported continued neck pain and headaches. (Tr. 656). He reported three headaches since February 8, and stated the ablations, Percocet, and Motrin were helpful and his pain is manageable. (*Id.*). He endorsed occasional paresthesia in the neck and fingertips and burning, radiating pain, rated at 6/10. (*Id.*). Physical examination revealed guarding, obvious dystonia, limited range of motion, positive facet loading maneuvers, nonfocal neurological sensory motor examination in the distribution of C3 through T1, and depressed reflexes in the bilateral patella and ankle. (Tr. 656-57).

On March 31, 2016, Mr. Borzymowski returned to Dr. Hedaya's office for chronic neck pain and headaches. (Tr. 658). Mr. Borzymowski stated the cervical ablation helped tremendously. (*Id.*). He described his pain as burning, radiating, and sharp, rated at 6/10. (*Id.*). Physical examination revealed continued guarding and tenderness over the cervical spine and positive facet loading maneuvers, but without dystonia, atrophy, fasciculations, or spasm. (Tr. 658-59). He continued to display depressed reflexes in the biceps, triceps, and brachioradialis, and nonfocal neurological sensory motor examination in the distribution of C3 to T1. (Tr. 659).

On May 12, 2016, Mr. Borzymowski returned to Dr. Hedaya's office with complaints of headaches and neck pain, described as achy, burning, radiating, and sharp, rated at 7/10, and associated with nausea, shortness of breath, and vomiting. (Tr. 660). He reported movement aggravated his pain. (*Id.*). Physical examination revealed considerable guarding and dystonia over the cervical spine, limited range of motion, positive facet loading maneuvers, nonfocal neurological sensory motor examination in distribution C3 through T1, depressed reflexes in the bilateral biceps, triceps, and brachioradialis, and normal gait and station with a cane. (Tr. 660-61). Dr. Hedaya informed Mr. Borzymowski that, based on new guidelines regarding use of chronic opiates for chronic pain, he was to be weaned off Percocet after his upcoming sleep apnea surgery. (Tr. 661).

On May 23, 2016, Mr. Borzymowski met with Dr. Bruner for a 6-month follow-up appointment. (Tr. 724). He complained of headaches, arthritis, and anxiety. (Tr. 725).

Mr. Borzymowski returned to Dr. Hedaya's office on June 16, 2016, complaining of neck and back pain and post-surgical throat pain. (Tr. 662). He described his neck and back pain as severe, rated 6/10, and worse with concentration, bending, sitting, standing, walking, coughing, sneezing, pushing, pulling, and lifting. (*Id.*). Physical examination revealed severe tenderness to palpation of the cervical and lumbar spine; positive facet loading maneuvers in the cervical and lumbar spine, worse on the right side; considerable guarding of the cervical spine, stable gait and station with a cane, non-focal sensory motor examination in the distribution of C3 through T1 and L1 through S1; and depressed reflexes in the bilateral biceps, triceps, and brachioradialis. (Tr. 663).

On July 13, 2016, Mr. Borzymowski returned to Dr. Hedaya's office with severe, intractable neck and back pain. (Tr. 665). Mr. Borzymowski reported Tramadol did not provide any relief. (*Id.*). He also complained of severe hand pain, described as burning and radiating. (*Id.*). He rated his pain at a minimum of 7/10 and explained it was associated with nausea, palpitations, and shortness of breath and aggravated by movement, especially twisting. (*Id.*). Dr. Hedaya noted Mr. Borzymowski was visibly distressed. (*Id.*). Physical examination revealed severe tenderness and guarding over the cervical spine, limited range of motion, and considerable dystonia. (*Id.*). Dr. Hedaya observed swelling in Mr. Borzymowski's hands, without erythema, edema, or laxity in the joints. (Tr. 666). Mr. Borzymowski's lumbar spine was severely tender to palpation, especially in the right buttock area, and he exhibited bilaterally depressed reflexes in the biceps, triceps, brachioradialis, patella, and ankle. (Tr. 666). The doctor also noted a "[p]oorly localizable neurological sensory motor examination in the upper and lower extremities." (*Id.*). Dr. Hedaya determined the pain was secondary to cervical spondylosis without myelopathy or radiculopathy, lumbosacral spondylosis without myelopathy or radiculopathy, and cervical dystonia. (*Id.*). He noted Mr. Borzymowski did not have relief with Flexeril, Skelaxin, baclofen, Cymbalta, Neurontin, or Lyrica, so he prescribed tizanidine as a muscle relaxant, Effexor for neuropathic pain, a shot of intramuscular Toradol, and a Medrol Dosepak for acute inflammation. (*Id.*).

When Mr. Borzymowski met with Dr. Bruner on August 19, 2016, he requested a referral to pain management for chronic pain. (Tr. 722). Mr. Borzymowski described carpal tunnel worse in the right hand, loss of grip strength, right shoulder pain, headaches, and migraines. (Tr. 723). Physical examination revealed bilateral lumbar tenderness, increased tone in the neck muscles, decreased cervical range of motion, and degenerative joint changes in the hands. (*Id.*). Dr. Bruner

provided a referral to pain management physician Sherif Zaky, M.D., and prescribed acetaminophen-codeine #4 (T4) for pain. (Tr. 722).

On September 20, 2016, Mr. Borzymowski met with Dr. Zaky, complaining of neck pain that he described as sharp, achy, and numb. (Tr. 749). Dr. Zaky reviewed Mr. Borzymowski's last cervical MRI, dated November 21, 2014, and noted minimal disc bulging at C5-C6 and C6-C7 without significant central canal stenosis and bony hypertrophic change of the right facet joint of C2-C3 causing moderate right neuroforaminal narrowing. (*Id*.). Mr. Borzymowski complained of frequent headaches starting in his neck and radiating to his forehead, low back pain, frequent imbalance, and neck pain with intermittent numbness in the bilateral hands, worse on the right. (*Id*.; Tr. 751). He described feeling not well-rested on awakening from sleep and reported taking three to five naps a week. (Tr. 750).

Dr. Zaky noted Mr. Borzymowski could heel-toe walk with assistance and ambulated with an antalgic gait. (Tr. 751). Physical examination revealed negative Hoffman and Spurling tests, positive bilateral FABER and SLR tests, tenderness to palpation of the cervical paraspinal muscles, right lumbar paraspinal tenderness, positive facet load testing, and intact reflexes and senses. (*Id*.). Dr. Zaky also noted Mr. Borzymowski's right-hand grip strength was stronger than the left hand, and he displayed a severe limitation in range of motion. (*Id*.). Dr. Zaky concluded cervical spondylosis and cervical degenerative disc disease, and recommended aquatic therapy. (Tr. 752). He increased the dose of tizanidine and prescribed acetaminophen-codeine #3 (T3) for pain. (*Id*.).

On October 18, 2016, Mr. Borzymowski returned to Dr. Zaky's office, complaining of neck pain with intermittent radiation into the bilateral upper extremities and intermittent numbness and tingling, frequent headaches, and low back pain. (Tr. 745). Mr. Borzymowski reported that

9

physical therapy was aggravating his pain, rated at 6/10. (*Id.*). Physical examination findings were identical to his previous visit, with additional findings including bilateral occipital and supraorbital tenderness. (Tr. 747). Dr. Zaky ordered a lumbar X-ray, added a prescription for Topamax, and offered bilateral occipital and supraorbital nerve blocks. (Tr. 478).

A cervical MRI dated November 10, 2016, revealed a mild asymmetrical posterior disco-osteophytosis at the right subarticular level with slight asymmetrical anterior indentation of the thecal sac, slight disc narrowing at C5-C6 with mild anterior osteophytosis and mild broad-based annular bulging with mild anterior indentation of the thecal sac, and slight central annular bulging at C6-C7 with slight anterior indentation of the thecal sac. (Tr. 892). A lumbar X-ray obtained that day revealed mild to moderate disc narrowing at L1-L2 and L2-L3, mild disc narrowing at L3-L4, and moderate disc narrowing at L5-S1. (Tr. 895).

On November 21, 2016, Mr. Borzymowski returned to Dr. Zaky's office and reported the last injection provided relief for almost thirty-six hours and the Topamax provided headache relief. (Tr. 783).

Between September 29 and December 13, 2016, Mr. Borzymowski attended seventeen physical therapy sessions and was then discharged to an independent home program. (Tr. 764). Therapy was targeted to the lumbar spine after cervical spine therapy was placed on hold until further diagnostic testing. (*Id.*). The physical therapist noted at the time of discharge Mr. Borzymowski was able to achieve temporary relief of lumbar symptoms after aquatic therapy. (*Id.*).

On December 15, 2016, Mr. Borzymowski returned to Dr. Zaky's office and reported the cervical facet medial branch block provided minimal improvement for a short period of time but he still had neck pain radiating between his shoulder blades and low back pain. (Tr. 779). He

stopped taking Topamax after the increased dosage caused fever blisters and a rash. (*Id.*). Dr. Zaky noted Mr. Borzymowski could heel-toe walk with assistance and ambulated with an antalgic gait. (Tr. 781). Physical examination revealed negative Hoffman and Spurling tests, positive bilateral FABER and left SLR tests, tenderness to palpation of the right cervical paraspinal muscles, bilateral occipital and supraorbital tenderness, bilateral lumbar paraspinal tenderness, positive facet loading test, and intact reflexes and senses. (Tr. 781-82). Dr. Zaky also noted Mr. Borzymowski's right-hand grip strength was stronger than the left hand, with severe limitation in range of motion. (Tr. 781). Dr. Zaky recommended a lateral right cervical facet medial branch nerve block followed by a radiofrequency ablation if applicable, refilled medications, and ordered a lumbar MRI. (*Id.*).

On January 12, 2017, Mr. Borzymowski returned to Dr. Zaky's office and reported sixty percent relief for six to eight hours, with increased function, following the most recent injection. (Tr. 775). He complained of neck and low back pain, rated 6/10. (*Id.*). Dr. Zaky noted Mr. Borzymowski could heel-toe walk with assistance and ambulated with an antalgic gait. (Tr. 777). Physical examination revealed negative Hoffman and Spurling tests, positive bilateral FABER tests, negative SLR tests, tenderness to palpation of the bilateral cervical paraspinal muscles, bilateral occipital and supraorbital tenderness, bilateral lumbar paraspinal and SI tenderness, positive facet load test, and intact reflexes and senses. (*Id.*). Dr. Zaky again noted Mr. Borzymowski's right-hand grip strength was stronger than the left hand, with severe limitation of range of motion. (*Id.*). He recommended a second right cervical facet medial branch block followed by a right cervical facet radiofrequency ablation if applicable and continued Mr. Borzymowski's medications. (Tr. 778).

11

On January 31, 2017, Mr. Borzymowski returned to Dr. Zaky's office and reported seventy to eighty percent relief for eight hours, with increased function, following the most recent injection. (Tr. 771). He complained of neck pain and frequent headaches. (*Id.*). Dr. Zaky noted Mr. Borzymowski could heel-toe walk with assistance and ambulated with an antalgic gait. (Tr. 773). Physical examination revealed negative Hoffman and Spurling tests, positive bilateral FABER tests, negative SLR tests, tenderness to palpation of the bilateral cervical paraspinal muscles worse on the left, bilateral occipital and supraorbital tenderness, bilateral lumbar paraspinal and SI tenderness, positive facet load testing, and intact reflexes and senses. (*Id.*). Dr. Zaky also noted Mr. Borzymowski's right-hand grip remained stronger than the left hand, with severe limitation of range of motion. (*Id.*). He recommended a right cervical facet radiofrequency ablation and continued Mr. Borzymowski's medications. (Tr. 774).

On February 17, 2017, Mr. Borzymowski met with Dr. Bruner for his 6-month follow-up appointment. (Tr. 785). He complained of frequent headaches (at least three a week), sleep disturbances, and discomfort in the paracervical region. (Tr. 785-86).

On March 1, 2017, Mr. Borzymowski met with Dr. Zaky two weeks after the radiofrequency ablation procedure, noting continued cervical pain and frequent headaches. (Tr. 823). Dr. Zaky noted Mr. Borzymowski could heel-toe walk with assistance. (Tr. 825). Physical examination revealed negative Hoffman and Spurling tests, positive bilateral FABER tests, negative SLR tests, tenderness to palpation of the bilateral cervical paraspinal muscles worse on the left, severe limitation in cervical range of motion on the left and moderate limitation on the right, bilateral occipital and supraorbital tenderness, bilateral lumbar paraspinal and SI tenderness, positive facet load testing, and intact reflexes and senses. (*Id.*). Dr. Zaky again noted Mr.

Borzymowski's right-hand grip strength was stronger than the left hand, with severe limitation in range of motion on the left, and moderate limitation in range of motion on the right. (*Id.*). Dr. Zaky recommended giving the ablation procedure more time to take full effect. (*Id.*).

On March 21, 2017, Mr. Borzymowski met with Dr. Zaky and reported continued neck pain and frequent headaches, without a decrease in pain since his prior visit. (Tr. 819). He noted use of a topical compound cream and T3 provided only mild pain relief. (*Id.*). Dr. Zaky noted Mr. Borzymowski could heel-toe walk with assistance. (Tr. 821). Physical examination revealed negative Hoffman and Spurling tests, positive right-sided FABER test, positive right-sided SLR test, tenderness to palpation of the bilateral cervical paraspinal muscles worse on the left, bilateral occipital and supraorbital tenderness, bilateral lumbar paraspinal and SI tenderness worse on the right, intrascapular tenderness, and intact reflexes and senses. (*Id.*). Dr. Zaky also noted Mr. Borzymowski's right-hand grip strength was stronger than the left hand, with severe limitation in range of motion on the left and moderate limitation on the right. (*Id.*). He refilled prescriptions for T3 and tizanidine, added a prescription for ibuprofen 800 mg for headaches, and recommended a left cervical facet medial branch block. (Tr. 822).

On April 18, 2017, one week after the branch block, Mr. Borzymowski returned to Dr. Zaky's office and reported thirty percent relief for three to four hours following the procedure and significant improvement in range of motion during that time. (Tr. 815). He continued to report low back pain, neck pain between his shoulders and at the base of his skull and frequent headaches, fifteen to twenty days a month. (*Id.*). Physical examination revealed identical findings from the prior visit. (Tr. 817). Dr. Zaky did not recommend a left cervical facet radiofrequency

13

ablation because Mr. Borzymowski did not report significant relief with the right-sided procedure. (Tr. 818). He prescribed T4. (*Id.*).

On May 15, 2017, Mr. Borzymowski reported severe headaches worse on the right side, three to five times a week, and that T4 provided adequate relief. (Tr. 811). Physical examination revealed negative Hoffman and Spurling tests, positive right-sided FABER test, positive right-sided SLR test, tenderness to palpation of the bilateral cervical paraspinal muscles worse on the left, bilateral occipital and supraorbital tenderness, bilateral lumbar paraspinal and SI tenderness worse on the right, intrascapular tenderness, and intact reflexes and senses. (*Id.*). Dr. Zaky also noted Mr. Borzymowski's right-hand grip strength was stronger than the left hand, with severe limitation in range of motion on the left and moderate limitation on the right. (*Id.*). For headache pain, Dr. Zaky performed right greater and lesser occipital nerve blocks and bilateral supraorbital and supra trochlear nerve blocks in the office. (Tr. 814).

On June 19, 2017, Mr. Borzymowski returned to Dr. Zaky's office with continued complaints of headaches, three to four times weekly. (Tr. 807). He reported eighty percent improvement with the most recent injections, lasting three days. (*Id.*). Mr. Borzymowski also complained of neck pain with radiation to his right shoulder. (*Id.*). He rated his pain at 8/10. (*Id.*). Physical examination revealed negative Hoffman and Spurling tests, positive right-sided FABER test, positive right-sided SLR test, tenderness to palpation of the bilateral cervical paraspinal muscles worse on the left, bilateral occipital and supraorbital tenderness, bilateral lumbar paraspinal and SI tenderness worse on the right, intrascapular tenderness, and intact reflexes and senses. (Tr. 809). Dr. Zaky also noted Mr. Borzymowski's right-hand grip strength remained stronger than the left hand, with severe limitation in cervical range of motion on the left and

14

significant limitation on the right. (*Id.*). He recommended a right occipital nerve block followed by an occipital radiofrequency ablation and continued his medications. (Tr. 810).

On July 11, 2017, Mr. Borzymowski followed up with Dr. Zaky after a cervical facet medial branch block on the right C2 and the third occipital nerve and reported eighty percent pain relief and functionality for six hours following the procedure. (Tr. 804). He rated his pain at 6/10. (*Id.*). Physical examination revealed similar findings as the prior visit. (Tr. 805). Dr. Zaky recommended a right occipital nerve block followed by an occipital radiofrequency ablation and continued his medications. (*Id.*). Mr. Borzymowski followed up with Dr. Zaky on August 2, 2017, one week after the branch block and reported eighty percent relief for four and a half hours following the procedure. (Tr. 846). Dr. Zaky recommended a right cervical facet medial branch and third occipital nerve radiofrequency ablation and refilled his medications. (Tr. 849).

On August 16, 2017, Mr. Borzymowski underwent a cervical facet medial branch radiofrequency ablation on the right at C2 and C3. (Tr. 859). On August 30, 2017, Mr. Borzymowski reported fifty percent pain relief for 48 hours following the ablation. (Tr. 916). He endorsed improved headaches that continued to occur two to three times a week. (*Id.*). Dr. Zaky explained it could take up to six weeks for the ablation to reach maximum effect. (Tr. 919). He prescribed Gabapentin 300 mg. (*Id.*).

On September 27, 2017, just before the passage of Mr. Borzymowski's date last insured, he returned to Dr. Zaky and complained of headaches and neck and back pain, rated 7/10. (Tr. 914). Dr. Zaky recommended a right greater and lesser occipital nerve radiofrequency ablation and refilled prescriptions for T4 and tizanidine. (Tr. 915).

On April 26, 2019, Mr. Borzymowski's EMG of the upper extremities revealed findings consistent with "[b]ilateral C8 radiculopathies which are mild in degree electrically median neuropathies, at or distal to the wrist, such as in carpal tunnel syndrome, which are moderate/severe in degree electrically," and without evidence of cervical motor radiculopathy or brachial plexopathy. (Tr. 1422). A cervical MRI, dated April 29, 2019, revealed C5-C6 and C6-C7 spondylosis, mild diffuse disc bulges at C5-C6 and C6-C7, and mild to moderate neural foraminal narrowing at C4-C5 and C6-C7. (Tr. 1428).

On February 10, 2020, Mr. Borzymowski underwent right carpal tunnel release surgery. (Tr. 1527).

### III.  MEDICAL OPINIONS

State agency medical consultant Leon D. Hughes, M.D., reviewed Mr. Borzymowski's medical records and, on November 25, 2016, determined he was not disabled. (Tr. 288-99). Dr. Hughes adopted the residual functional capacity assessed by an ALJ on May 15, 2015, and determined Mr. Borzymowski is capable of sedentary work except he can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; never crawl; rarely kneel or crouch; never balance on one lower extremity at a time or stoop greater than 90 degrees; must avoid exposure to hazards, including vibration and uneven floor surfaces; and must not turn or twist the neck or torso to the ends of range of motion but can turn his body to accommodate. (Tr. 296, 298).

On September 20, 2017, State agency medical consultant Steve E. McKee, M.D., reconsidered the updated medical records, adopted Dr. Hughes's opinions, and determined Mr. Borzymowski was not disabled. (Tr. 301-17).

On November 8, 2017, Dr. Bruner completed a Medical Source Statement and opined Mr. Borzymowski is limited to lifting and carrying ten pounds occasionally; standing or walking for twenty minutes at a time and for one hour total in an eight-hour workday, provided he can take frequent breaks; and sitting for thirty minutes at a time and for three hours total in an eight-hour workday, provided he can frequently adjust positions and has neck support for longer periods of sitting. (Tr. 861). Additionally, Dr. Bruner concluded Mr. Borzymowski can rarely climb, balance, stoop, kneel, crouch, and crawl; can rarely reach, push, pull, or engage in fine or gross manipulation; and is affected by heights, moving machinery, extreme heat, pulmonary irritants, and noise. (Tr. 861-62). Dr. Bruner opined Mr. Borzymowski experiences moderate-to-severe pain that varies from day to day that interferes with concentration, takes him off task, and would cause absenteeism. (Tr. 862). Finally, in addition to standard breaks, Mr. Borzymowski would require a ten-minute break every hour. (*Id.*). In support of his opinions, Dr. Bruner noted:

> Due to diagnosis of hypertension, vertigo, chronic tension headaches, migraine, cervical myalgia, and occipital neuralgia the patient is unable to lift any weight over 10 pounds, has a difficult time with walking, standing, and sitting for prolonged periods of time. [Patient] also has difficulty with repetitive movements. [Patient] also needs assist of a cane when walking.

(Tr. 861). He explained Mr. Borzymowski can rarely do postural activities due to vertigo and increased pain and excessive movements are not recommended due to chronic epidemic cervical myalgia and chronic tension headaches. (Tr. 861-62).

On October 1, 2018, Dr. Bruner completed a second Medical Source Statement and opined Mr. Borzymowski is limited to lifting and carrying ten pounds occasionally, five pounds frequently; standing or walking for fifteen minutes at a time and for three hours total in an eight-hour workday; and sitting for thirty minutes at a time and for five hours total in an eight-hour

workday. (Tr. 1027). Additionally, Dr. Bruner concluded Mr. Borzymowski can rarely climb, stoop, kneel, crouch, and crawl, and occasionally balance; can rarely reach, occasionally push, pull, and perform fine manipulation, and frequently perform gross manipulation; and is affected by heights, moving machinery, and extreme cold. (Tr. 1027-28). He noted Mr. Borzymowski had prescriptions for a cane and a brace and would need to be able to alternate positions at will. (Tr. 1028). Dr. Bruner opined Mr. Borzymowski experiences severe pain that interferes with concentration, takes him off task, and would cause absenteeism. (*Id.*).

## IV.   OTHER RELEVANT EVIDENCE

In an initial Disability Report, dated October 6, 2016, Mr. Borzymowski asserted that physical conditions, including neck pain, migraines, numbness in hands, vertigo, hypertension, gout, sleep apnea, GERD, and tinnitus limit his ability to work. (Tr. 440). Mr. Borzymowski completed a Function Report, dated October 27, 2016, noting difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, concentration, and using his hands. (Tr. 456). He asserted that neck and back pain limit his abilities to twist his neck or raise his head, bend, crouch, stoop, twist, reach, lift, climb, stand, or sit for prolonged periods; he drops objects he is trying to manipulate, like coins, due to hand and arm numbness; and migraines limit his ability to concentrate and complete tasks. (*Id.*; Tr. 451, 455). Mr. Borzymowski uses a cane for balance and to help relieve pain. (Tr. 451). Sleep apnea, numbness in his hands, and headaches disrupt his sleep. (Tr. 452).

## V.   ADMINISTRATIVE HEARING

Mr. Borzymowski testified at more than one administrative hearing. At the most recent hearing, he testified to severe neck pain that leads to migraine headaches. (Tr. 1070). The

migraines occur multiple times a week and some last for several days on end. (*Id.*). He has numbness radiating down his arms and into his fingertips. (*Id.*). As a result, he tends to drop things. (*Id.*). He also has low back pain. (Tr. 1071). Treatment for migraines and back pain, such as nerve burnings, have provided limited, short-term relief. (*Id.*). Pain medication helps to an extent. (*Id.*). His medications cause drowsiness and dry mouth. (Tr. 1072). Mr. Borzymowski also finds some relief while lying down with his head supported. (*Id.*). He estimated he can walk or stand for twenty minutes to a half hour and lift fifteen to twenty pounds. (Tr. 1072-73).

On a typical day, Mr. Borzymowski wakes up around 5:30 in the morning. (Tr. 1073). His days are dictated by his level of pain. (*Id.*). He begins his day by washing up in the restroom and watching the news while lying on the sofa. (*Id.*). Once tasks are complete, he returns to the sofa. (*Id.*). In the evening, he takes a muscle relaxer and, if necessary, pain medication. (*Id.*). Mr. Borzymowski usually tosses and turns all night and as a result gets about four or five hours of sleep. (*Id.*). Mr. Borzymowski does the cooking, but his fiancée does the housework. (Tr. 1074).

Mr. Borzymowski disclaimed being able to work in sedentary position sorting nuts and bolts because he cannot sit for prolonged periods of time without neck support and numbness in his hands makes it difficult to manipulate objects and causes him to drop objects. (Tr. 1077).

The ALJ adopted the prior ALJ's identification of Mr. Borzymowski's past relevant work: (1) material handler, DOT #929.687-030, heavy exertion generally and as Mr. Borzymowski performed it; (2) forklift driver, DOT #921.683-050, medium exertion generally, heavy as performed; and (3) machine operator, DOT #619.685-062, medium exertion generally and as performed. (Tr. 1079).

19

VE Robert Bond then testified. The ALJ asked the VE if a hypothetical individual of Mr. Borzymowski's age, education, and work experience could perform his past relevant work if limited to sedentary exertion and restricted to the following: occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; requires the use of a cane for ambulation and balance; must avoid exposure to hazards such as moving machinery, unprotected heights, and concentrated levels of vibration; can perform simple, routine, common, and repetitive tasks, but not at a production rate pace; make simple, work related decisions; occasionally interaction with supervisors, coworkers, and the general public, but no team or tandem work with coworkers; and frequent handling, fingering, and feeling with the bilateral upper extremities. (Tr. 1080). VE Bond testified the individual would not be able to perform Mr. Borzymowski's past relevant work but identified other sedentary positions the hypothetical individual could perform, including: (1) final assembler, DOT #713.687-018, with 15,000 jobs nationally; (2) lens inserter, DOT #713.687-026, with 12,000 jobs nationally; and (3) eyeglass framer, DOT #713.684-038, with 15,000 jobs nationally. (Tr. 1080-81).

The ALJ broadened the hypothetical to consider all exertion levels and asked the VE if the necessity to take frequent breaks at will after twenty minutes and the ability to sit for only three hours total with frequent adjustment would be work preclusive. (Tr. 1081). The VE was unable to answer the question as posed. The ALJ then asked if an individual is employable if he or she needed a few minutes for a break after twenty minutes of work, about six minutes every hour. (Tr. 1082). The VE responded the hypothetical worker could not maintain employment if the off-task time accounted for more than 15% of the workday. (*Id.*).

20

If the individual required the ability to sit and stand at will while remaining on task for 85% of the day, the individual could perform the identified sedentary positions. (*Id.*). However, there are no jobs available if the individual must use a cane for balance and ambulation and also requires a sit/stand option at will. (Tr. 1087-88). If limited to occasional handling, fingering, and feeling, a hypothetical individual would not be able to perform the previously identified sedentary positions or any sedentary positions. (Tr. 1083).

The VE also testified one absence per month would not affect job retention. (Tr. 1084).

### THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

1.  The claimant last met the insured status requirements of the Social Security Act on September 30, 2017.

2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 20, 2015 through his date last insured of September 30, 2017 (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: degenerative disc disease at C5-C7; degenerative joint disease from C2-C3; herniated disc at L5-S1; obstructive sleep apnea; migraines; and degenerative disc disease lumber spine with spondylosis (20 CFR 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, and crawl. He requires the use of an assistive device (cane) to ambulate and balance; and, can never be exposed to hazards such as moving machinery or unprotected heights and concentrated levels of vibration. He can perform simple, routine, common and repetitive tasks, but not at a production rate pace so, for

example, no assembly line work. He can make simple, work-related decisions; and can respond appropriately to occasional interaction with supervisors, coworkers, and the general public, but not team or tandem work with coworkers. He is limited to frequent handling, fingering, and feeling with the bilateral upper extremities.

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on August 10, 1970, and was 47 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8.  The claimant has at least a high school education (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have perform (20 CFR 404.1569 and 404.1569a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, at any time from May 20, 2015, the alleged onset date, through September 30, 2017, the date last insured (20 CFR 404.1520(g)).

(Tr. 1041-50).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health &*

*Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security,* 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

Even if substantial evidence supports the decision, a district court will not uphold that decision when the ALJ failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision … will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right"); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541, 546–47 (6th Cir. 2004) (Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights). Furthermore, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11:13000, 2012 WL 5383120, *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

> 5.    Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

ANALYSIS

Mr. Borzymowski summarizes his argument as follows:

> First, the ALJ failed to properly evaluate Mr. Borzymowski's hand functioning despite ample evidence within the record. Compounding this error is the ALJ's reliance upon inaccurate and inconsistent vocational expert testimony in conflict with substantial evidence, SSR 96-9p, and the Dictionary of Occupational Titles. Specifically, the ALJ found Mr. Borzymowski capable of sedentary work, while also requiring the use of a cane for ambulation and balance. This dichotomy is untenable.

> Both resulted in a residual functional capacity lacking a basis in substantial evidence. For these reasons, [Mr. Borzymowski] moves for an order of reversal or remand.

(Pl.'s Br., ECF #9, PageID 1799). In relation to hand functioning, Mr. Borzymowski claims the objective medical evidence, including the results of the upper extremity EMG not reviewed by a State agency medical consultant or other medical expert, supports a more restrictive manipulative limitation than frequent handling, fingering, and feeling. (*Id.* at PageID 1800). Mr. Borzymowski

claims the ALJ assessed his RFC on the basis of bare medical findings (the EMG), and as a result, the ALJ's determination of the RFC is not supported by substantial evidence. (*Id.*). Mr. Borzymowski asserts "the ALJ does not retain the medical expertise to determine the impact of moderate to severe EMG findings on a timeline of limitation and onset" and had a duty to call a medical expert to testify at the hearing, send Mr. Borzymowski for a consultative examination, or present the question of manipulative limitations in the form of an interrogatories to a medical expert. (*Id.* at PageID 1800-01).

The Commissioner responds that substantial evidence supports the ALJ's RFC finding as to Mr. Borzymowski's manipulative limitations during the period under review, *i.e.*, before the expiration of Mr. Borzymowski's date last insured. (Comm'r Br., ECF # 10, PageID 1825). The Commissioner asserts the evidence regarding potential manipulative limitations was mixed and the ALJ's finding is not subject to reversal merely because substantial evidence may exist to support a different conclusion. (*Id.* at PageID 1827).

In relation to his second argument, Mr. Borzymowski asserts the VE may not have "fully understood the hypothetical being asked and the parameters necessary to perform work at the sedentary level." (Pl.'s Br., ECF #9, PageID 1802). Further, he argues "[t]he necessity to use the cane while standing, coupled with the DOT's requirements for sedentary work which requires up to two hours of standing and walking, results in a significant erosion of the occupational work base," a finding inconsistent with the VE's testimony and the ALJ's findings. (*Id.* at PageID 1803).

I.   **Substantial evidence does not support the ALJ's limitation to frequent fingering, handling, and feeling.**

An individual's impairments and any related symptoms (such as pain) may cause physical and mental limitations that affect what the individual can perform in a work setting. 20 C.F.R.

§ 404.1545(a). The residual functional capacity (RFC) – what an individual can still do despite his or her limitations – is a function-by-function assessment of the person's ability to do work-related activities, the determination of which is based on all the relevant record evidence including medical history, signs and laboratory findings, the effects of treatment, reports of daily activities, medical opinions, and the effects of symptoms, including pain. SSR 96-8p, 1996 WL 374184, *3, *5. The ALJ must assess the claimant's RFC and form an RFC appropriate to that person's abilities, supported by the ALJ's evaluation of the evidence. 20 C.F.R. § 404.1546(c); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ must also provide a narrative discussion describing how the evidence supports each conclusion, citing medical facts such as laboratory findings and nonmedical evidence such as reports of daily activities. SSR 96-8p at *7.

When the Appeals Council remanded this matter to the ALJ, it determined the prior unfavorable decision lacked an adequate evaluation of Mr. Borzymowski's manipulative limitations. (Tr. 1139). The AC noted that at the hearing Mr. Borzymowski endorsed numbness; reported numbness, tingling, and pain in his hands to his treatment providers; and physical examination showed depressed upper extremity reflexes, hand swelling, tenderness in bilateral wrists, degenerative joint changes in the hands, stronger grip strength for the right hand compared to the left, and poorly localizable nonfocal neurological sensory examination in the cervical spine, "which may impact the hand functioning." (*Id.*).

Here, as concerns Mr. Borzymowski's hand function, the ALJ acknowledged his complaints of numbness and tingling causing issues with his ability to manipulate objects, physical difficulties in performing household tasks and personal hygiene, and the need to take breaks to complete

household tasks. (Tr. 1044, 1045). Later, the ALJ summarized the evidence she found pertinent to

Mr. Borzymowski's complaints, as follows:

> The claimant had allegations of numbness and tingling in the bilateral upper
> extremities, and was eventually diagnosed with carpal tunnel syndrome. EMG was
> performed after the date last insured, which showed mild bilateral C8
> radiculopathies, and moderate to severe bilateral carpal tunnel syndrome, with no
> cervical motor radiculopathy or brachial plexopathy. He did undergo carpal tunnel
> release, well after the date last insured. Prior to the date last insured, the claimant
> had complaints and objective findings that would reasonably project this
> impairment into the period under review. For instance, at pain management
> consultation in July of 2015, examination showed symmetric but depressed reflexes
> in the bilateral upper extremities. In September 2015, the claimant reported
> numbness and tingling in the hands bilaterally, and examinations in 2017 showed
> limitations of the range of motion in the bilateral hands.

(Tr. 1046). The ALJ concluded Mr. Borzymowski's allegations regarding his symptoms are not fully

supported and specifically discounted the alleged severity of his hand numbness and tingling

because he was "conservatively treated prior to the date last insured." (Tr. 1047). Finally, the ALJ

concluded "due to the claimant's carpal tunnel syndrome, he is limited to only frequent handling,

fingering, and feeling with the bilateral upper extremities." (*Id.*).

At this juncture, it is important to note the medical record, as summarized above, shows

each of the following:

- consistently depressed biceps, triceps, and brachioradialis reflexes at no less
  than nine appointments between July 2015 and June 2016 (*see* Tr. 647,
  648, 652, 654, 656, 659, 660, 663);

-  swelling and degenerative joint changes in the hands (*see* Tr. 666, 723);

- consistent findings of weaker left grip strength than the right, and severe
  limitation of range of motion in the hands between September 2016 and
  June 2017 (*see* Tr. 750, 773, 777, 781, 809, 811, 821, 825);

- poorly localizable or nonfocal neurological sensory examinations in the
  cervical spine (*see* Tr. 642, 648, 652, 654, 656, 659, 660, 666); and

- multiple reports of numbness, tingling, severe pain, and loss of grip strength. (*See* Tr. 648, 723, 745, 749).

The Sixth Circuit has long held "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quotation omitted); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). However, the Court examines the record as a whole, including whatever evidence "in the record fairly detracts from its weight," without "resolv[ing] conflicts in evidence or decid[ing] questions of credibility" to determine whether an ALJ's decision is supported by substantial evidence. *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (quotations omitted). Thus, where an ALJ has "improperly cherry picked evidence" instead of "more neutrally weighing the evidence," the ALJ's decision is not likely supported by substantial evidence. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); *see Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("[S]ubstantiality of evidence evaluation does not permit a selective reading of the record.").

Dr. Bruner is the only physician of record who opined as to the severity of Mr. Borzymowski's manipulative limitations. The State agency physicians adopted the prior ALJ's RFC that omitted any manipulative limitations. (*See* Tr. 288-99, 301-17). The ALJ did not adopt Dr. Bruner's opinion on the manipulative restrictions, concluding the records "did not support the level of preclusion opined by Dr. Bruner in most exertional activities," noting the limited number of times he examined Mr. Borzymowski and the variable clinical findings from Dr. Bruner's treatment notes. (Tr. 1048). The ALJ also did not adopt the State agency consultants' RFC because

"limitations in the use of the bilateral upper extremities" were supported by the 2019 EMG findings and Mr. Borzymowski's reported symptoms during the review period that were consistent with carpal tunnel syndrome. (*Id*). Instead, the ALJ made her own medical evaluation, reaching a conclusion that lay between the conflicting views of the physicians. The ALJ concluded Mr. Borzymowski "is limited to frequent handling, fingering, and feeling with the bilateral upper extremities" (Tr. 1043), a conclusion no medical professional of record has adopted.

Aside from considering one treatment note showing depressed reflexes, one treatment note showing Mr. Borzymowski's reports of numbness and tingling, and treatment notes of limited range of motion testing in the bilateral hands, which the ALJ minimized by failing to articulate the degree of limitation as severe on the left and moderate to severe on the right, there is little within the ALJ's decision that allows this Court to trace the path of her reasoning between the evidence and the limitation to frequent handling, finger, and feeling, especially in light of the information the ALJ eschewed during her summarization of the medical evidence. While the ALJ is not required to cite every piece of evidence, the decision barely addresses the myriad of probative evidence related to Mr. Borzymowski's hand function. Furthermore, while the ALJ concluded Mr. Borzymowski's related hand and arm complaints during the review period are confirmed by the later acquired EMG, thus providing a basis for some limitation, the ALJ offered no insight into how she determined the degree of restriction for handling, fingering, and feeling. Without such insight into the ALJ's reasoning, the decision is not supported by substantial evidence and requires remand.

**II.    The ALJ's reliance on the VE's testimony is supported by substantial evidence.**

In his second argument, Mr. Borzymowski claims VE Bond's testimony suggests he did not fully understand the hypothetical being asked or the parameters necessary to perform sedentary work. (Pl.'s Br., ECF #9, PageID 1802). Further, he claims the necessity to use a cane for balance coupled with a limitation to sedentary work "results in a significant erosion of the occupational work base." (*Id.* at PageID 1803).

These arguments are unpersuasive. Admittedly, as the Commissioner points out, there was some confusion about the clarity with which the ALJ posed her questions and the VE's testimony, but the confusion was ultimately clarified. In the end, the VE testified that an individual requiring a cane for ambulation and balance *and* requiring a sit/stand option at-will could not perform any jobs. (Tr. 1087, 1088). This does not suggest the VE's testimony as a whole is suspect or that the VE did not understand the parameters of sedentary work.

Moreover, while sedentary work represents a significantly restricted range of work, the rules in Table No. 1 in appendix 2 take administrative notice that there are approximately 200 separate unskilled sedentary positions, each representing numerous jobs, in the national economy. SSR 96-9p, 1996 WL 374185, *3. While there may be significant erosion of the occupational base for sedentary work if the individual uses a medically required cane and is limited in balancing, such erosion is not a forgone conclusion and, in such cases, it "may be especially useful to consult with a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work." *Id.* at *7.

Here, the ALJ consulted a vocational resource, the VE, when the ALJ presented the controlling hypothetical at the administrative hearing. The VE did not testify to any erosion of the

occupational base. When offered the chance to cross examine VE Bond, Mr. Borzymowski's counsel focused only on obtaining clarification of whether a cane plus the necessity for an at-will sit/stand option was work-preclusive. Counsel did not question the VE on erosion of the occupational base in light of the limitation to sedentary work and the use of a cane for balance and ambulation. By declining to cross examine the VE on this issue, Mr. Borzymowski has forfeited his SSR 96-9p argument. *See Sims v. Comm'r of Soc. Sec.,* 406 F. App'x 977, 982 (6th Cir. 2011).

CONCLUSION

Following review of the arguments presented, the record, and the applicable law, I **REVERSE** the Commissioner's decision denying disability insurance benefits and **REMAND** this matter for proceedings consistent with this opinion.

Dated: March 13, 2023

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE